(77 South. 582)

No. 20964.

NEAL et al. v. PITRE et al.

(Jan. 3, 1918.)

*(Syllabus by the Court.)*

1. TAXATION  ⬤⟹110—TAX SALE—VALIDITY.

Where property has been adjudicated to the state at tax sale, and several years later it is again sold at a tax sale, based on an assessment made in the name of "unknown owners," the latter sale is a nullity.

2. TAXATION  ⬤⟹697(1) — TAX SALE — REDEMPTION.

Under section 62, Act 170 of 1898, the right of redemption can only be exercised by the owner or other person interested personally, or as heir, legatee, creditor, or otherwise.

3. TAXATION  ⬤⟹697(6) — TAX SALE — REDEMPTION—RIGHTS OF PURCHASER.

Where a tax sale is null and void, the purchaser at such sale, becoming neither owner, heir, creditor, or other person having a personal interest, does not thereby become enti-

tled to the right of redemption under section 62 of Act 170 of 1898. If, however, he does in fact pay for and obtain such redemption, he does so for the benefit of the owner or other person in interest, against whom he is entitled to an equitable claim for the amounts thus disbursed by him.

Appeal from Twelfth Judicial District Court, Parish of Vernon; Jas. R. Monk, Judge ad hoc.

Action by Frank H. Neal and others against Columbus Pitre and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Cline & Cline, W. M. Lyles, and Hardin & Hardin, all of Leesville, for appellants. Sidney I. Foster, of Shreveport, for appellees.

LECHE, J. Defendant appeals from a judgment recognizing plaintiffs as owners of certain lands situated in the parish of Vernon. Plaintiffs, as sole legal heirs of R. M. Henderson and Mrs. M. A. Henderson, charge that the lands in question were sold by the sheriff of the parish of Vernon and adjudicated to the state of Louisiana on July 13, 1894, for the unpaid taxes of 1890, 1891, 1892, and 1893; that in 1907 the same lands, although title thereto was in the state, were assessed in the name of "unknown owners," and under that assessment were again sold by the sheriff of said parish on April 28, 1908, to B. H. Lyons for the unpaid taxes of 1907; that a few days thereafter, May 13, 1908, Lyons conveyed the same to Columbus Pitre, and that said Pitre, representing himself as owner of said property, obtained on May 23, 1908, from the state auditor, a certificate of redemption of the same. Plaintiffs finally charge that the sale of April 28, 1908, for the unpaid taxes of 1907, was an absolute nullity, and that the redemption certificate of May 23, 1908, from the state of Louisiana, inures to their benefit as real owners of said property, and they accordingly pray to be recognized as such, and that

upon reimbursing said defendant the cost of said redemption, of which they have already made tender, they be quieted in their possession and ownership of said lands.

Defendant Columbus Pitre was duly cited on April 18, 1911, and before answering filed exceptions of no right and no cause of action and want of proper parties. These 'pleas being overruled, he answered plaintiffs' demand on October 5, 1911, denying all allegations of plaintiffs' petition, and finally averring that he had sold the property in suit to John L. Wasey, who purchased for a valuable consideration and in good faith in the month of July, 1911.

Plaintiffs then filed a supplemental petition, averring that the alleged transfer by Pitre to Wasey was made solely to harass, hinder, delay, and damage petitioners; that Wasey did not act in good faith, but was aware of the pendency of this suit and of the status of the title to the lands in controversy at the time of the said transfer. They reiterate all the allegations of their original demand, and pray for judgment accordingly, also against Wasey.

Wasey then appeared, filed exceptions of the same nature as those previously pleaded by Pitre. These exceptions being overruled, he answered by a general denial, averring his purchase to have been made in good faith, and further pleaded the prescription of three years under article 233 of the Constitution.

After due trial on the merits, judgment was rendered in favor of plaintiffs as prayed for. The entry of the minutes of the lower court then shows that:

"Counsel for the defendant, in open court, in the presence of counsel for the plaintiff, moved the court for an order of appeal, both suspensive and devolutive, to the Supreme Court of the state of Louisiana, sitting at New Orleans, La., which order of appeal, both suspensive and devolutive, to the Supreme Court of the state of Louisiana, the court granted, fixing the return day, and making the same returnable on or before the 18th day of November, 1914. The court fixed both the suspensive and devolutive appeal bonds in the equal sums of $150."

We transcribe the above entry in full in order to show that the present appeal was apparently taken by only one of the defendants, and that it fails to show which one, although they each furnished a separate bond of appeal; that of Wasey being signed by Pitre as surety, and that of Pitre being signed by Lyons, who was adjudicatee at the tax sale of April 28, 1908. Although there was no motion made to dismiss this appeal, the manner in which it was taken, by the same attorney who acted for both defendants, and the further fact that no demand in warranty was made by Wasey as against Pitre, or by Pitre as against Lyons, lends color to the charge made by plaintiffs in their supplemental petition, as to the bad faith of Wasey when he purchased from Pitre, to which we will further advert on the merits of the case.

[1, 2] The exceptions of no right and no cause of action filed by defendants are based on the ground that plaintiffs, although suing as heirs, have failed to allege the deaths of their ancestors. It is true that this allegation is not as clear and concise as it might have been, but plaintiffs do allege that Neal "is the only heir of Mrs. M. A. Henderson, who by her first marriage was the wife of. Meraday Neal, the father of petitioner, and that Mrs. Rosana Shackelford and Epheus G. Henderson are the only two heirs of R. M. Henderson, deceased." The word "deceased" being preceded by a comma, evidently refers to Mrs. M. A. Henderson as well as to R. M. Henderson. The petition then proceeds as follows: "Your petitioners show that during the lifetime of their respective ancestors," etc. This allegation sufficiently shows that plaintiffs' ancestors had departed this life when this suit was filed, and in fact the context of the whole petition can

only be reasonably interpreted on that theory. Another reason which might be suggested, although it is not advanced or argued by defendant, and which might appear as destructive of plaintiffs' right of action, is that at the time the tax sale of April 28, 1908, took place, plaintiffs' ownership of the property had been divested by a valid tax sale previously made to the state in 1894, and therefore that plaintiffs had no right to question the validity of the later sale of 1908, under the doctrine laid down in Quaker Realty Co. v. Labasse, 131 La. 997, 60 South. 661, Ann. Cas. 1914A, 1073, and Baldwin Lumber Co. v. Dalferes, 138 La. 508, 70 South. 493. The principle announced in the quoted cases would be perfectly applicable but for the fact that at the time this suit was filed, April 18, 1911, the state auditor had issued a certificate of redemption of the said land, and the effect of that redemption was to divest the title of the state, to cancel the tax sale of 1894, to reinstate the ownership of the property in such person as it would have belonged to if there had been no tax sale, and to reinvest the title of the property to the "owner, or any person, interested personally, or as heir, legatee, * * * or otherwise," according to the provisions of section 62, Act No. 170 of 1898. Now the question arises, regardless of the particular person to whom the auditor might have given the certificate of redemption, as to who possessed the quality of "owner, or other person interested personally, or as heir, legatee," etc., when the redemption took place. It must be kept in mind that the law does not place any discretion in the auditor as to the selection of the person entitled to the redemption; such person is designated by the statute without regard to the views or opinion of the auditor, and that person must be possessed of at least one of the qualities required by that statute. Which one, as between the plaintiffs and Pitre, possess-

ed such a quality can only be ascertained by inquiring into the validity of the tax sale of April 28, 1908, and if that sale was valid then Pitre was entitled to redeem, and if not valid then plaintiffs were entitled to that right. The fact that the auditor issued the certificate to Pitre is of no importance. The redemption inured to the benefit of whoever might be "owner, or other person interested personally, or as heir, legatee," etc. If that person was Pitre, he became absolute owner of the property. But to ascertain whether Pitre was that person, it is necessary to inquire into the validity of the tax sale of April 28, 1908, and upon the result of that inquiry must depend the right of action of plaintiffs. If the tax sale of April 28, 1908, is null, it is evident that the redemption inured to the benefit of plaintiffs. It is therefore clear that the right of action of plaintiffs depends upon such nullity, which can only be ascertained on the trial of the merits of the case. The exception of no cause of action was properly overruled, and that of no right of action or want of interest must be referred to the merits, of which it forms an integral part.

The exception of nonjoinder of parties seems to us equally without merit. Plaintiffs allege that the tax sale of April 28, 1908, is null and void, and if that is a fact, then they very properly brought their suit against the only necessary defendant, the possessor of the property. Vinton Oil Co. v. Gray, 135 La. 1060, 66 South. 357. The facts alleged in plaintiffs' original petition are all borne out by the evidence. The sale of April 28, 1908, was based upon an assessment made in the name of "unknown owners," although at that time the title to the property was in the state. The state's property could not be sold in any such manner. Section 61 of Act No. 170 of 1898 provides for the method in which property which has been adjudicated to the state for nonpayment of taxes may be dis-

posed of, and there being no authority in the assessor or tax collector to cause or make the sale of April 28, 1908, that sale is null, unless it has acquired validity by the curative effect of the constitutional prescription of three years.

The plea of three-year prescription, under article 233 of the Constitution, advanced by defendant John L. Wasey, can be of no avail to him, because, granted that the so-called tax sale of April 28, 1908, could ripen into a valid title, the prescriptive period had not yet elapsed when plaintiff filed his action to have said sale declared null. The tax deed of April 28, 1908, was recorded on May 4, 1908, and this suit was filed on April 18, 1911, within three years. The sale from Pitre to Wasey does not ameliorate the situation of defendants. Their acts and conduct throw suspicion over the reality of this transaction, but even if we concede that the sale was made in good faith, the law does not contemplate that a tax purchaser may defeat the rights of an owner, who has sued within the period fixed by the Constitution to have declared the nullity of a tax sale, by transferring the tax title to another, just after the prescriptive period has elapsed, so as to place it within the power of his transferee to plead that prescription.

[3] Being of the opinion then that the tax sale of April 28, 1908, was a nullity, it could vest no title or interest in the property in Lyons or Pitre. Pitre being without interest in the property as owner, heir, legatee, creditor, or otherwise could not create a title in himself by obtaining a redemption certificate from the auditor, and such certificate did not vest in him, but vested in the plaintiffs, the rights which the state had acquired under the tax sale of July 13, 1894. Section 62, Act 170 of 1898. The only right Pitre could and did acquire in so doing was an equitable claim against the former owners of the property for the amount which he disbursed in order to secure the certificate of redemption. The judgment appealed from awards him that claim as well as all other taxes paid by him. That is legal and equitable, and the said judgment is affirmed.