183 So. 285

### JOHNSON v. CHAPMAN et al.

No. 34662.

March 7, 1938.

On Rehearing June 27, 1938.

Second Rehearing Denied Aug. 5, 1938.

Goff & Goff, of Arcadia, for relators.

P. E. Brown, of Arcadia, and Wm. H. Talbot, of New Orleans, for respondent.

ODOM, Justice.

Plaintiff brought this petitory action against the defendants and prayed to be decreed the owner of an undivided one-half interest in the South 26 acres of the NE¼ of the NE¼, Sec. 18, T. 17, N. R. 4 W., in Bienville Parish.

The facts, in so far as they need to be stated, are:

The land involved was allotted in a partition to Mrs. Drilla Chapman in 1895. Mrs. Chapman died, leaving as her sole heirs two children, a daughter named Pattie and a son named J. D. Chapman, who inherited the land jointly. There is nothing to show that these heirs were ever formally recognized and put into possession by judgment, so that, in so far as the records showed, Mrs. Drilla Chapman continued to be the owner of the land.

Pattie Chapman sold her undivided half interest in the land to the plaintiff, Gip Johnson, on January 24, 1930, she having lived on it continuously up to the date of the sale. As between the two heirs, the land was never partitioned.

For the year 1921, the tract was assessed to D. Chapman. As the land apparently stood on the records in the name of Drilla Chapman, the assessor evidently intended to assess it to her and instead of writing out the name "Drilla" he used the initial "D".

The taxes for 1921 were not paid, and the entire interest in the land was adjudicated to the state on September 2, 1922, as the property of D. Chapman. It was not redeemed within one year. For the year 1927, some five years after the land had been adjudicated to the state and four years after the one-year period for redemption had expired, it was assessed to H. G. Chapman, who did not own it. The taxes under the 1927 assessment not having been paid, the land was sold by the state tax collector to W. L. Hamner, on June 23, 1928. For the year 1928 the land was again assessed to H. G. Chapman and again sold to W. L. Hamner for the 1928 taxes, on June 19, 1929. Hamner sold the land to J. D. Chapman on January 6, 1932.

Gip Johnson, who had purchased a one-half interest in the tract from Pattie Chapman on January 24, 1930, paid to the Register of the State Land Office at Baton Rouge the required amount to redeem the land adjudicated to the state for the taxes of 1921 in the name of D. Chapman. A formal certificate of redemption was issued and recorded. This was in the year 1934, about two years before he filed this suit. The redemption inured to his benefit in so far as his one-half interest in the land was concerned, he being the record owner of it by purchase from Pattie Chapman.

The suit is against J. D. Chapman, who purchased from W. L. Hamner, and against Hamner, whose claim to the property was based upon his purchase at the tax sales in 1928 and 1929. The suit involves only the one-half interest in the land claimed by Johnson. If Hamner acquired no valid title to Johnson's one-half interest by virtue of these tax purchases, he could convey none to J. D. Chapman.

Plaintiff attacked the tax sales made to Hamner, alleging that they were null and void because the assessments under which they were made were absolutely null; that the assessments were illegal and void because, at the time they were made, the state had title to the land, the same having been adjudicated to it on September 2, 1922, and not redeemed.

The Court of Appeal, Second Circuit, held that the tax sales made to Hamner were void and ordered them cancelled from the records. Several issues were raised in the case, some relating to the facts and others involving questions of law, all of which were decided by the Court of Appeal. The reason we ordered the case up was that counsel for relators made the following allegation in their application for writs:

"The decision of the Court of Appeal in this case and the cases cited by it in support thereof, all court of Appeal Cases, are contrary to law and the decision of this the Supreme Court, in Gamet's Estate v. Lindner, 159 La. 658, 106 So. 22, and Stockbridge v. Martin, 162 La. 601, 110 So. 828, in which Neal v. Pitre, 142 La. 737, 77 So. 582, was expressly overruled, and there is

presented the question of a 'rule of property,' with two lines of decision contrary to each other, one by the Court of Appeal and the other by the Supreme Court, which clearly authorizes the issuance of a writ of certiorari or review under Art. 7, Sec. 11 of the Constitution."

The point involved in that allegation and the one stressed by counsel is that the case of Neal v. Pitre, 142 La. 737, 77 So. 582, has been twice overruled by this court. If that be true, the jurisprudence of the state as relates to the major issue involved in the Pitre Case—which is the main point involved in the case at bar—is indeed in confusion.

In Neal v. Pitre, supra, Pitre was in possession of, and claimed to own, certain land which he had acquired by purchase from B. H. Lyons. Lyons had purchased the land at tax sale on April 28, 1908, this sale having been made under an assessment of the land for the year 1907 to "Unknown Owners".

The land was owned originally by Henderson, and the suit against Pitre was brought by the Henderson heirs. They alleged that Pitre had no valid title to the land because the tax sale made to Lyons, his author in title, was an absolute nullity, for the reason that, at the time the land was assessed to "Unknown Owners" in 1907 and at the time it was sold under that assessment, the title thereto was in the state, the land having been adjudicated to the state on July 13, 1894, for the unpaid taxes of 1890, 1891, 1892 and 1893, and not redeemed.

After Pitre purchased the land from Lyons, he obtained from the state auditor a certificate of redemption, representing himself as the owner of the land. This was on May 23, 1908. One of the issues involved in the case was whether the redemption of the land by Pitre inured to his benefit or whether it inured to the benefit of plaintiffs, who were the heirs of the original owner. The court said that the question whether the redemption inured to the benefit of Pitre depended upon the question whether he was the owner of the land at the time the certificate of redemption was issued. He did not claim to be an heir or a creditor of the original owner, and, if not the owner himself, he had no interest in redeeming it, and therefore the redemption did not inure to his benefit, because, under Section 62, Act No. 170 of 1898, the right to redeem lands adjudicated to the state is granted to "the owner, or any person, interested personally, or as heir, legatee, creditor or otherwise" in such property.

The court said therefore it became necessary to decide whether Pitre owned the land at the time he obtained the certificate of redemption, and whether he owned it or not depended upon whether the tax sale at which Lyons purchased it was valid.

So that the major issue before the court was whether the tax sale to Lyons, based upon an assessment of the land in 1907, while the title thereto was vested in the state by virtue of the adjudication in 1894, was valid. It was held that the subsequent sale was void and of no effect.

In the course of its opinion, the court said (at page 742, 77 So. at page 584):

"The sale of April 28, 1908, was based upon an assessment made in the name of 'unknown owners,' although at that time the title to the property was in the state. The state's property could not be sold in any such manner."

That ruling was in strict accord with the jurisprudence of the state up to that time. In Winn Parish Bank v. White Sulphur Lumber Company, 133 La. 282, 62 So. 907, the land involved was adjudicated to the state on April 3, 1886, for the unpaid taxes of 1882 to 1885. The land was purchased at tax sale by J. D. Wright in 1899. The court said (at page 288, 62 So. at page 909):

"The abstract does not show under what kind of assessment the tax sale of 1899 was made. The tax sale of 1886 to the state precluded the assessment of the property for taxes for the year 1898.

"On the case as presented, we are bound to conclude that the Wrights acquired no title to this tract of 40 acres."

In the case of Board of Commissioners v. Concordia Land & Timber Company, 141 La. 247, 74 So. 921, the ruling of the court on this particular point is correctly stated in Paragraph 4 of the Syllabus, which reads as follows:

"Where property is adjudicated to the state for delinquent taxes thereon, the le-

gal title passes to the state, subject to the right of redemption within one year from the date of the registry of the tax sale; and, if such right is not seasonably exercised, the title of the state becomes absolute. Where property has been adjudicated to the state, and not redeemed in time and manner provided by the statute, the taxing officers of the state are without power to assess and sell said property as belonging to the former owner or any other person."

In the Pitre Case the ruling of the court on this particular point was precisely the same as that in the Winn Parish Bank and the Concordia Land & Timber Company Cases, although they were not cited. So that, if the case of Neal v. Pitre, supra, in so far as it decided the point here involved, was later overruled, then the other two cases were also overruled by implication.

The two cases referred to as overruling Neal v. Pitre, supra, are Gamet's Estate v. Lindner, 159 La. 658, 106 So. 22, and Stockbridge v. Martin, 162 La. 601, 110 So. 828.

A careful reading of these cases shows that the Pitre Case was not overruled by either.

In Gamet's Case the issue involved and decided by the court was whether property, which had been previously adjudicated to the state for state taxes and not redeemed within one year, might subsequently be legally assessed to the former record owner by the City of New Orleans for the collection of municipal taxes, and,

where property was thus assessed by the city and sold for city taxes, whether title emanating from the city under such assessment was valid.

It was held that, although the property had been adjudicated to the state for state taxes, it was not free from city taxes; and that such property might subsequently be assessed and sold by the municipality for city taxes, subject to the rights of the state. So that the question whether property, which has been adjudicated to the state for state taxes and not redeemed within one year, may, after the expiration of one year, be assessed and sold by the state for state taxes, was not involved and not decided. The question involved in Gamet's Case was whether a municipality is barred from collecting its taxes merely because the state held title by virtue of a previous adjudication to it. The court held that the city was not cut off, and most cogent reasons were assigned for so ruling.

In Gamet's Case the court clearly drew the distinction between the case of Neal v. Pitre, supra, and the case under consideration. At page 666, 106 So. at page 25 of the opinion, it was said:

"In Neal v. Pitre, cited supra, both sales, the one to the state and the other to defendant's author, appear to have been made in satisfaction of state taxes."

The court criticized the Neal v. Pitre Case, not because it was held in that case that the subsequent sale of the property was invalid, but because the opinion indicated that the only method by which property adjudicated to the state could be sold

was under the provisions of Section 61, Act No. 170 of 1898. The court said this was erroneous and stated its reasons. In the course of its opinion, the court, referring to the Neal v. Pitre Case, said: "That case, however, stands alone in the jurisprudence, and contains no references whatever to those cases holding a contrary view."

That statement, however, was made in answer to the contention that Lindner, who had purchased the · property under an assessment and sale by the city, was not entitled to redeem the property from the state. The court having held that the sale by the city to Lindner was valid, it follows, of course, that Lindner, being the owner of the property, had a right to redeem it from the state. The court seems to have thought that it was held in the Pitre Case that the heirs of the original owner were given the exclusive right under the statute to redeem the property adjudicated to the state. Certainly the organ of the court in Gamet's Case did not mean that the case of Neal v. Pitre, supra, stood alone in the jurisprudence of the state in so far as it was there held that, once property had been adjudicated to the state for state taxes, it could not again be assessed and sold by the state for state taxes, because it had been previously held in the two cases cited supra that valid title could not be conferred by such subsequent assessment and sale. And it had been held in Puritan Company v. Clarkson, 145 La. 1099, 83 So. 315, that:

"A sale, purporting to be a sale for taxes, of lands belonging to the public domain of the state, and therefore not subject to assessment for taxes, is an absolute nullity, not protected by the provisions of Const. art. 233, establishing the three-year prescriptive period."

In Stockbridge v. Martin, supra, certain lots were assessed to O'Neal for the taxes of 1918 and adjudicated to the city for the taxes of that year on September 9, 1919. The same property was assessed to the same owner for the taxes of 1919 and under that assessment was sold to the defendant Martin on July 30, 1920. Subsequently Martin's tax title was attacked by Stockbridge on the ground that the city owned the property at the time the second assessment and sale were made, and that Martin's title was therefore null. The court held that the tax sale to Martin was valid. But in that case it was pointed out that the second assessment of the property was made prior to the date on which the property was adjudicated to the city, and that the property was sold to Martin before the expiration of one year after the adjudication to the city. In other words, at the time the assessment of 1919 —or the second assessment—was made, O'Neal still owned the property, and, at the time the sale was made to Martin, · the prior adjudication to the city had not ripened into perfect title.

Subsequent decisions clearly show that it has never been thought that the Pitre Case was overruled in so far as the major point there involved is concerned.

In McCall v. Blouin et al., 18 La.App. 717, 138 So. 528 (Orleans Court), plaintiff claimed to be the owner of certain

properties in the City of New Orleans, which he had purchased from the Third District Land Company on December 9, 1929. The land company claimed title by virtue of a tax sale to it by the city on April 5, 1926, for city taxes of 1924. The suit was originally brought against several former owners of the property, but subsequently the City of New Orleans was made a party defendant by supplemental petition. The city answered, claiming title to the property by virtue of an adjudication to it on April 15, 1915, for the city taxes of 1912, the property not having been redeemed under that adjudication.

The court said:

"The first point to be considered is the effect of the tax sale of April 5, 1926, under which plaintiff claims title, in view of the adjudication to the city of New Orleans of April 15, 1915."

The court held that "City's sale, under erroneous tax assessment, of unredeemed property formerly adjudicated to city for taxes held null" (Paragraph 3, Syllabus).

In the course of its opinion, the court said:

"It thus appears that following the adjudication of property to the city the law requires it to be assessed in the name of the person to whom it belonged at the date of adjudication for a period of one year, following which the property is to remain in the possession of the city until it shall have been redeemed in the manner pointed out. The fact that the property is continued upon the rolls in the name of the former owner, and taxes under the continued assessment collected, cannot operate as an estoppel against the city in claiming title to property which has not been redeemed, and a sale made under such erroneous assessment is null. See Neal et al. v. Pitre et al., 142 La. 737, 77 So. 582, 584, where it was said:

"'The sale of April 28, 1908, was based upon an assessment made in the name of "unknown owners," although at that time the title to the property was in the state. The state's property could not be sold in any such manner. * * *

"'Being of the opinion then that the tax sale of April 28, 1908, was a nullity, it could vest no title or interest in the property in Lyons or Pitre.'"

Counsel for McCall applied to this court for writs. In his application counsel said:

"Your petitioner further shows that the Court of Appeal for the Parish of Orleans in rendering its judgment decreed that the sale by the City of New Orleans to your author in title *is null and void by reason of a prior sale to the City of New Orleans itself for prior taxes, and in reaching its decision relied upon the decision of this Honorable Court in Neal et als. v. Pitre, 142 La., 737, 77 So. 582. * * *

"Now your petitioner with respect further represents that this matter was thoroughly inquired into and passed upon in Gamet's Estate v. Lindner, 159 La., 658, 106 So. 22, in which case your Honors definitely overruled the Neal v. Pitre Case and in the said suit of Gamet's Estate v. Lindner, supra, your Honors held that the taxing authorities could sell property

for delinquent taxes notwithstanding a prior sale to any other taxing authorities for prior delinquent taxes." (Italics are by the writer of this opinion.)

This application was referred to Justice Land, who reported his findings to the court in consultation. After a thorough consideration in consultation of the issues involved, Justice Land wrote on the back of the record "Writ refused, judgment correct". This inscription was initialled not only by Justice Rogers, who wrote the opinion in the Gamet's Case, but by every other member of this court as then constituted.

The Court of Appeal based its ruling squarely upon the Neal v. Pitre Case, and counsel's application for writs shows clearly that he so understood, and he specifically alleged that the judgment was erroneous because Neal v. Pitre, supra, had been expressly overruled by the Gamet's Case. The fact that this court refused the writ, saying that the judgment was correct, shows that it was not considered that the case of Neal v. Pitre, supra, had been overruled.

As touching the question whether the state, after property has been adjudicated to it and not redeemed within 12 months, may again legally assess the property and sell it for its taxes, the case of St. Bernard Syndicate v. Grace, 169 La. 666, 125 So. 848, is interesting. In that case, the syndicate owned a tract of 90,000 acres of land, which was adjudicated to the state for the unpaid taxes of 1923. The state reassessed the same property to the same owner for the year 1924. The property

was not redeemed. In 1927 the former owner of the property tendered to the tax-collecting authorities the amount of taxes, interest and penalties for the years 1923 and 1924, and asked that a certificate of redemption be issued. It was contended by the tax authorities that the former owner, in order to redeem the property, not only should pay the taxes for 1923 and 1924 but must also pay an amount equal to what the taxes with interest would have amounted to for the years subsequent to the adjudication to the state.

Plaintiff brought suit against the officers of the state to compel the issuance to it of a certificate of redemption for the amount tendered, its contention being that it was due no taxes except those which had been assessed against the property. The court overruled this contention on the ground that, after the lapse of one year from the adjudication, the property could not be assessed to the former owner. We quote the following extracts from the opinion (page 849):

"Indeed, there could have been no legal assessment made of the property for the years for which the plaintiff resists payment. [This refers to the taxes from 1924 to 1927.]

"The title to the property was in the state, and the state does not assess its own property for taxes."

It is pertinent here to say that, if there is no assessment, there can be no sale of property for taxes.

In holding that the former owner of the property must pay not only the taxes for

1923 and 1924, when the property was actually assessed, but those of subsequent years as well, the court pointed out that Section 62, Act No. 170 of 1898, as amended by Act No. 41 of 1912, provides that, in order to redeem, all taxes "due" on the property must be paid; that the legislature used the word "due" advisedly. It said:

"The word 'due' in these several statutes was not inserted by accident, but was used advisedly if not appropriately. The word 'assessment' *would have been absurd because the lawmaker well knew that there could be no assessment subsequent to the adjudication to the state except for the one year following the adjudication.*" (Italics are ours.)

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

O'NIELL, C. J., does not take part in this decision.

### On Rehearing.

LAND, Justice.

This is a petitory action brought by the plaintiff, Gip Johnson, against the defendant, J. D. Chapman, in actual possession, claiming to be the true and lawful owner of an undivided one-half interest in the South Twenty-six (26) acres of N.E.¼ of N.E.¼, Section 18, Township 17 North, Range 6 West, situated in Bienville Parish in this State.

The title came by direct chain from the United States to Drilla Chapman, who acquired from the Dock Johnson heirs through a partition. At her death, decedent left two heirs, Pattie P. Chapman, and the defendant, J. D. Chapman, who inherited each an undivided half interest in the property in dispute.

Plaintiff claims an undivided one-half interest in the land through deed of date January 24, 1930, from Pattie P. Chapman.

Defendant, J. D. Chapman, alleges that W. L. Hamner purchased the S.½ of N. E.¼ of N.E.¼ and N.E.½ of S.E.¼ of N.E.¼ at a tax sale on June 23, 1928, and again on June 19, 1929, under an assessment to H. G. Chapman for unpaid taxes of the years 1927 and 1928; that W. L. Hamner took possession of the property under the deed and continued same until January 6, 1932, at which time defendant, J. D. Chapman, purchased the property and continued in possession of same until the present time. Defendant pleads the constitutional prescription of three years as a bar to all rights of the tax debtor or any other persons.

The tax deeds from H. G. Chapman to W. L. Hamner, also a defendant in this suit, are attacked by plaintiff only on the ground that the State was vested with title at the date of the assessments.

The Court of Appeal, Second Circuit, held that the tax sales made to Hamner were void and ordered them cancelled from the records, and, on original hearing, we affirmed that judgment.

So far as the State having title in 1927 and 1928, when the property was assessed to H. G. Chapman and sold to W. L. Hamner, a review of the record conclusively shows that it had none.

The District Court rendered judgment in favor of defendants because the trial Judge found that, although the property had been adjudicated to the State in the name of D. Chapman for the unpaid taxes of 1921, the taxes had previously been paid for that year by H. G. Chapman.

The District Court also found that, although the property had been adjudicated to the State for 1922 taxes under an assessment in the name of H. G. Chapman, this adjudication was erroneous and was cancelled by the Register of the State Land Office for that reason.

The assessment of H. G. Chapman for 1921, under which the taxes were paid, is shown on page 78 of the record in this case, which shows that the taxes were paid by him August 19, 1922. The tax adjudication to the State under the assessment to D. Chapman was not made until September 2, 1922, as shown by pages 70 and 71 of the record. Therefore the State acquired no title to this property and had none in 1927 and 1928 when the property was sold to W. L. Hamner under this adjudication.

Plaintiff has attempted in vain to switch from an adjudication in the name of D. Chapman to an adjudication for unpaid taxes of 1922 under an assessment in the name of H. G. Chapman. This adjudication to the State in the name of H. G. Chapman is shown on pages 72 and 73 of the record. But on page 62 of the record is found the following cancellation certificate:

"Whereas, evidence is now on file in this office. showing that the sale to the

State of the property hereinafter described in Bienville Parish, made on the 16th day of June, 1923, for taxes of 1922 assessed in the name of H. G. Chapman *is erroneous,* to-wit:

" '25 Acres on S side of NE of NE, 13 acres on N side of SE of NE, Sec. 18-17-6.'

"Therefore, I Fred J. Grace, Register of the Land Office of the State of Louisiana, *do hereby cancel said sale,* and authorize the Recorder of Mortgages and the Register of Conveyances of said Parish *to cancel same* upon the records of his office.

"Given under my hand and seal of office at Baton Rouge, this 3rd day of March, A. D., 1932.

"Lucille May Grace
"Register of State Land Office."

Therefore, the State, by its own officers, recognized that it had no title under this adjudication and cancelled it.

Under the facts shown by the record in this case, the title of defendants is good and valid.

The judgment of Second Judicial District Court, Parish of Bienville, dismissed the demands of plaintiff, Gip Johnson, at his cost.

It was further ordered, adjudged and decreed by this judgment that the defendants, J. D. Chapman and W. L. Hamner, have judgment in reconvention against the plaintiff, Gip Johnson, sustaining the plea of prescription urged by defendants, and confirming the tax title of W. L. Hamner

as shown by tax deeds dated June 23, 1928, recorded in Book 87, Page 261, and June 19, 1929, recorded in Book 89, Page 209 of the Conveyance records of Bienville Parish, Louisiana, and quieting them in their possession of S.½ of N.E.¼ of N.E.¼ and N.½ of S.E.¼ of N.E.¼ of Section 18, Township 17 North, Range 6 West, under said tax deeds.

We find no error in the judgment of the Second Judicial District Court, Parish of Bienville.

For the reasons assigned, the judgment of the District Court is affirmed; the judgment of the Court of Appeal, Second Circuit, is annulled and reversed; and the judgment of this court on original hearing is recalled and set aside.

The right of plaintiff, Gip Johnson, to apply for a rehearing is reserved.

O'NIELL, C.J., takes no part.